## STATE v. SANDERS.

1. IMPROPER INFLUENCE ON JURY.—That deputy sheriff went into jury room to furnish pen and ink, and while there said to a juror, he could send instructions as to his horse; that some jurors went out of their room in charge of deputies to attend to call of nature, but had no conversation about case; that jurors were in charge of deputies not sworn, but clerk and defendant's attorneys were constantly in court room, are mere irregularities and do not effect merits of trial.

2. EVIDENCE—TRACKS.—CORONER may testify what inquiries he made to find out the guilty parties, and what statements a witness for the

State made in presence of defendant; that, defendant consenting, he took him near scene of homicide and had him place his foot in track which it fitted; that he took shoes of defendant while in jail and put them in tracks near dead body and they corresponded.

3. IBID.—OPINION.—After giving facts as to condition of soil at a particular place, witness may say that it was too hard for a person to make a track on.

4. IBID.—Where it has been stated during trial by Judge and defendants' counsel that defendants had been released from jail on one hundred dollars bond, it is not prejudicial error to refuse to let defendant make this statement.

5. IBID.—Statement by a witness that he had stated to a third person at a stated time a fact admitted on trial is not prejudicial error.

6. IBID.—CONTRADICTION.—The wife of defendant in homicide case may be contradicted by proof of contrary statement to a third person as to guilt of the accused.

7. CHARGE.—Portions of charge here complained of, taken in connection with whole charge, could not have impressed jury that they should convict on a *prima facie* case made beyond a reasonable doubt.

8. IBID.—Refusal of request as to effect of proof of independent circumstance in chain of circumstantial evidence did not have the effect of instructing jury they could consider every circumstance attempted to be proved by State, whether or not it was proved beyond reasonable doubt.

Before F. B. GARY, special Judge, Chester, Fall Term, 1905. Affirmed.

Indictment against James Sanders and Arthur Whitener for murder. From sentence on verdict of guilty, with recommendation to mercy, defendants appeal.

*Mr. W. H. Newbold,* for appellants, cites: *Jury should be kept apart while considering a case after charge:* 32 S. C., 403; 21 S. C., 172; 60 S. C., 76; 2 Rich., 122; 51 S. C., 319; 97 Ga., 702. *State must prove every circumstance relied on beyond reasonable doubt:* 24 S. C., 145; Stark. on Ev., sec. 856; 1 Green., sec. 13; 54 Cal., 398; 137 Mass., 245; 66 S. C., 394. *Hearsay evidence incompetent:* 1 Green., sec. 99.; 7 Crouch, 290; 1 Wheat., 6; 47 S. C., 335. *Defendant cannot be required to make evidence against him-*

*self:* 40 S. C., 363. *Opinion of witness as to condition of soil incompetent:* 55 S. C., 339; 40 S. C., 326; 1 Green., 440; 32 S. C., 400; 20 S. C., 452. *Defendant is not bound by statement of wife:* 40 S. C., 482; 1 Green., sec. 185; 66 Mo., 173. *Witness cannot be contradicted on irrelevant and collateral facts:* 1 Green., secs. 51 A, 448, 449, 455; 1 Stark. Ev., 164; 23 Gratt., 960; 33 S. C., 391; 2 Bail., 473; 49 S. C., 414; 55 S. C., 32. *Motion to strike out is proper where witness gives incompetent testimony:* 27 S. C., 178; 48 S. C., 249.

*Solicitor J. K. Henry,* contra, cites: *Only communications to jurors that are prejudicial affect verdict:* 1 Ency., 373, 374, note 5; 32 S. C., 399; 25 S. C., 172; *State v. Wine,* 58 S. C.; *Watts v. R. R.,* 60 S. C. *Every homicide at common law is prima facie murder:* 1 Hill, 302.

November 28, 1906. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. The defendants were indicted for the murder of one Mack Anderson, and were tried and convicted in the Court of General Sessions for Chester County at the Fall Term, 1905, special Judge F. B. Gary presiding.

After the rendition of the verdict, a motion for a new trial was duly made on the grounds: (a) That the jury was exposed to outside influences, the sanctity of their room invaded by an outsider, that they separated without authority and had talks with unauthorized persons, after being charged by the Court and before reaching a verdict. (b) That the evidence was insufficient to support the verdict—in fact, no evidence to sustain it. This motion was overruled by his Honor, the presiding Judge.

After this motion was overruled the defendants were sentenced, and they now appeal from the refusal of the motion for a new trial, and also upon the grounds that the Circuit

Judge committed errors in his admission of testimony and in his charge of the law.

We will now examine these alleged errors in their order.

"I. It is respectfully submitted that his Honor was in error in not granting a new trial on motion, (a) Because it was shown conclusively that the trial jury were exposed to outside influences, the sanctity of their room invaded by an outsider who had a talk with them, and after the Court, the solicitor, sheriff and sworn deputy left the court house, the jury while in charge of no one in particular, separated and had talks with other unauthorized persons after they were charged with the consideration of the case and before reaching a verdict."

This is a very serious charge, and we have, therefore, bestowed careful attention to the affidavits and evidence in support of the same on both sides. Thus it appears that the deputy sheriff was directed by the clerk of Court to furnish the jury with pen and ink, and in doing so he went into the jury room and placed the ink and pen on the table in said room, and remarked to one of the jurors that if he wished to send information home as to the care of his horse, he could do so. No reference was made by said deputy to anything involved in the trial. While it would be well that all the details of a trial should be concluded in the jury room before the jury is called into the same to make up their verdict, the matters complained of are purely irregularities and do not affect the validity of the verdict. If it had been shown that such deputy sheriff had made any reference to matters involved in the trial, it might have been good cause for a new trial, but such was not the case here. Also, when some of the jurors were carried, under the care of the sheriff's deputies, outside of the jury room by calls of nature, no request having been made of the Circuit Judge to permit the same, this was an irregularity merely, because it is not attempted to be shown that any conversation took place between the parties referring to the merits of the trial. The departure of the Circuit Judge, the solicitor, the sheriff and

deputy sheriff from the court room, while the jury were in their room, without the bailiffs being sworn to take charge of the jury, should have no serious effect, because the defendant's attorney and the clerk of Court were at all times in the court house while the jury was in its room. That the bailiff at the door of the jury room was in conversation with the foreman of the jury, cannot effect the question, for it transpired that the foreman was merely requesting the presence of the Judge to receive the verdict of the jury. The clerk of Court very properly rebuked the bailiff for any conversation with the foreman, and was informed in consequence of such rebuke that the jury was ready to render its verdict. Under these circumstances, **we see no** grounds for upsetting the action of the Judge in refusing this motion on these grounds.

(b) The responsibility, in capital cases, is placed upon the presiding Judge, but this being a case of such magnitude to the defendants, we have read every word in testimony, and are compelled to say that there was evidence sufficient to support the verdict.

We, therefore, overrule this ground of the motion for a new trial.

"II. That the Court erred, is respectfully submitted, in permitting the State's witness, Henry Gladden, to testify, over objection, that he made inquiries near the scene of the killing who were the perpetrators? who were suspected? And that he was told they had the man and it was one of the defendants. And in permitting said witness to testify, over objection, as to all the testimony and statements made to him by Alex. James, another witness for the State, and that James' wife testified the same, because the same was hearsay and prejudicial to the defendants, and the statements of James, as testified to by the witness, were irrelevant to the issue, having no connection with the homicide, except to substantiate James' testimony indirectly as to the time of night when the Sanders party arrived home from town the night of the homicide, which

James said was just before nine o'clock, in contradiction of the time that the defendant, Whitener, said he was at Sanders' house that night."

We may remark, that when Henry Gladden, who was the coroner, and as such, had conducted the investigation before the jury of inquest, was on the witness stand, he was asked to state fully and circumstantially the steps he had taken as coroner to unearth the perpetrator or perpetrators of this murder, and, without objection from the defendants, he had reached the point relating to the testimony of James and his wife. It was competent because the statements testified by this witness, Gladden, related to statements made by James and his wife in the presence of defendants. The Circuit Judge was careful to say that these were circumstances that might be detailed in this way. We think that there was no error in this, because James and his wife were examined as witnesses themselves and both defendants gave full testimony also.

"III. It is respectfully submitted that the Court was in error in permitting the State's witness, Henry Gladden, to testify, over objection, that he took defendant, Whitener, down in the pasture below where the body was found and had him put his foot in a track; and that his idea in taking him down there was to see where he went along; because it was shown that Whitener was a prisoner at the time, and he was being required to make evidence against himself."

It must be understood that all this occurred at the preliminary examination before the coroner. "The case" shows that Whitener made no objection to this, nor did he object on a similar application to compare his shoe with tracks while he was confined in jail. In a case of murder, such as here charged, it becomes necessary to use every legitimate means to reach the truth, and where a person consents to have his shoes placed in a track, this Court nor any other Court should object. This ground of appeal is overruled.

"IV. It is respectfully submitted that the Court was in error in permitting the witness, Henry Gladden, to testify, over objection, that he took the defendant's shoes from the jail and put them in tracks found near the dead body and that they fit, and in not striking out, on motion, all testimony in regard to comparisons of the tracks made with said shoes, because the shoes were procured from the defendant under fraud and duress, and was in effect compelling the defendants to criminate themselves, and make evidence against themselves when the tracks were a material part of the State's case."

Again, we repeat, that where parties do not object, when it is proposed to subject their shoes to measurements, it is too late to raise the objection on appeal. The "case" shows that the parties consented that their shoes should be so used as is set forth in this exception. This exception is overruled.

"V. That the Court erred in permitting the witness Henry Gladden, to testify, over objection, that the road in front of James Sanders' house for forty yards was so hard that a track could not be made, and that he could not track the defendant's track there because the ground was too hard for that, was a question for the jury and was merely an opinion, and was incompetent on the part of the witness."

We think the Circuit Judge was not in error here, because the witness had fully testified as to the condition of the soil before James Sanders' house, and it was one of those everyday matters upon which witnesses may give their opinions after stating the facts. This exception is overruled.

"VI. It is respectfully submitted that the Court was in error in not permitting the defendant's counsel to ask the witness, Henry Gladden, on cross-examination, that the defendants were released from custody when first committed to jail, on a bond of one hundred dollars each, and in holding that it was not competent to prove that they were so released, because it was competent to show

every move made in the case, and that the defendants had an opportunity to escape if they so desired, with only a small injury to their bondsmen."

This exception has nothing to sustain it, because both the trial Judge and attorneys for the defendants stated, in open Court before the jury, as a part of the trial, that both defendants had been released from custody by his Honor, Judge Gage, upon their entering into a bond of one hundred dollars ($100), conditioned upon their attendance upon Court as witnesses in this case; therefore, it was immaterial that the Circuit Judge held the testimony incompetent, because it had already been announced as a fact before the jury. This exception is overruled.

"VII. It is respectfully submitted that the Court was in error in permitting the witness, Simon Gardener, to testify, over objection, that he told his wife, when he got home and went to bed the night of the homicide, 'that he heard the deceased leaving his father's house now hollering,' because it was an opinion and incompetent."

We are unable to see any value to the appellants in this exception. It is admitted on all sides that the deceased left his father's house late on the night of November 21st, 1904. This exception is overruled.

"VIII. It is respectfully submitted that the Court was in error in permitting the witness, Mary Gardner, to testify in reply, over objection, that on the day of the inquest she heard Jane Sanders say to Mary Whitener, 'that Jim did kill Mack Anderson, and he had no business telling that lie on her,' or words to that effect, (a) because it was not in reply to anything brought out by the defendants, and (b) because the original question being irrelevant and answered only over objection, it was incompetent to so contradict the witness, Jane Sanders."

This exception is overruled, because the question was directed so as to effect the credibility of the witness, Jane Sanders, she having denied making the remark attributed to her.

"IX. It is respectfully submitted that the Court was in error in not striking out of the testimony of Mary Gardner contradicting the witness, Jane Sanders, on motion; (a) because the time of the alleged statement was made at a different time from that testified to by Mary Gardner; and (b) because the original question was irrelevant."

We do not understand this objection to arise on the record and it is, therefore, overruled.

"X. It is respectfully submitted that his Honor erred in charging the jury: 'Now, if you find that the State has made out a *prima facie* case, or if you find that the State has not made out a *prima facie* case to your satisfaction beyond a reasonable doubt, then you need not go any further; but if you find that the State has fully made out a *prima facie* case to your satisfaction beyond a reasonable doubt, then you go a step further, and ascertain whether or not the defendants have established their especial defense of an alibi;' (a) because such instruction was misleading to the jury, and induced the belief that the jury may convict the defendant on a probable case alone, if such probable case was made out to their satisfaction, beyond a reasonable doubt; (b) because such instruction shifted the burden of proof to the defendants, upon the State making out a probable case, provided the jury was satisfied beyond a reasonable doubt that such a showing had been made out by the State; whereas, the burden of proof never shifted to the defendants until the State had made out a case and established their guilt to the satisfaction of the jury, beyond a reasonable doubt."

A careful review of the charge of the Judge shows how careful he was to lay down the rules of law governing a homicide. He repeatedly admonished the jury that the burden was upon the State to establish the guilt of the defendants beyond every reasonable doubt. The general charge being so full we cannot see how the language imputed to him in this exception could possibly mislead the jury. This exception is overruled.

27—75—

"XI. It is respectfully submitted that his Honor erred in not charging the jury, as requested by the defendants' counsel, 'that the State, in a case of circumstantial evidence, must prove every circumstance beyond all reasonable doubt; that whenever the State undertakes to prove a circumstance, and fails to prove that circumstance, independent, standing by itself, beyond all raesonable doubt, that the jury ought to disregard that circumstance;' and that the Court instructed the jury, 'that he could not tell them to disregard any circumstance, but that he could only instruct them that the circumstances relied on by the solicitor must be proved by him, and they must point so directly to the guilt of the prisoner as to exclude any other reasonable hypothesis,' and that such instruction tended to lead the jury to believe that they could consider every circumstance that the solicitor attempted to prove, whether it was proven beyond a reasonable doubt or not."

We can see that the Circuit Judge fully answered the demands of the law in his charge as here made. We repeat, that the Circuit Judge pointed out to the jury its duty as to solving reasonable doubts. This exception is overruled.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.